In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1577

SRINIVASA MUSUNURU,

*Petitioner-Appellant,*

*v.*

LORETTA E. LYNCH, ET. AL,

*Respondents-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin, Milwaukee Division.
No. 2-14-cv-00088 — **Lynn Adelman**, *Judge.*

ARGUED OCTOBER 29, 2015 — DECIDED AUGUST 3, 2016

Before FLAUM, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* Srinivasa Musunuru is a native and citizen of India who desires to become a lawful permanent resident through the Immigration and Nationality Act's employment-based immigrant visa process. At one point in time, he was the beneficiary of two visa petitions, the first filed by his previous employer, Vision Systems Group ("VSG"), and the second filed by his current employer, Crescent Solutions. Those visa petitions were assigned priority dates, which

placed him in a long line of those eligible to receive a limited number of immigrant visas. The priority date assigned to VSG's visa petition allowed him to file an application with the United States Custom and Immigration Service ("USCIS") for adjustment of status to permanent resident. But when an immigrant visa finally became available to Musunuru, USCIS did not adjust his status. Instead, it revoked VSG's visa petition. This invalidated the earlier priority date assigned to the petition, and left Musunuru with the later priority date assigned to Crescent Solutions' petition. Because the priority date assigned to Crescent Solutions' petition was much later, Musunuru must now wait several more years before USCIS can adjudicate his application allowing him possibly to become a permanent resident.

USCIS revoked VSG's petition because the owners pleaded guilty to the unlawful hiring of an alien and mail fraud, both in connection with an unrelated employee. Based on the owners' convictions, USCIS presumed that all the visa petitions filed by VSG were fraudulent. Musunuru could have shown that his employment was not fraudulent, but USCIS did not give him the opportunity. USCIS sent notice of its intent to revoke the petition to VSG only, even though VSG had gone out of business and Musunuru had long since changed employers to Crescent Solutions. USCIS did so because VSG was the petitioner and the regulations provided notice to only the petitioner. This left Musunuru unaware of the revocation. When he finally discovered what had happened, he requested that USCIS reconsider its revocation of VSG's petition. USCIS

denied the request because Musunuru was the petition's ben-
eficiary, not the petitioner, and therefore lacked standing to
administratively challenge the revocation.[1]

Musunuru filed a petition for judicial review under the
Administrative Procedures Act. He claimed that the statutory
portability provision that kept VSG's visa petition valid while
he "ported" from VSG to Crescent Solutions also gave him a
procedural right to pre-revocation notice and an opportunity
to respond, as well as a right to administratively challenge the
revocation. He also claimed that USCIS's application of the
regulations denied him his right to procedural due process as
protected by the Fifth Amendment. The district court granted
USCIS's motion to dismiss. It found that the regulations did
not entitle Musunuru to pre-revocation notice or an oppor-
tunity to respond, and that Musunuru did not have standing
to administratively challenge the revocation. The district
court also found that Musunuru's Fifth Amendment rights
were not violated.

We reverse. We hold that USCIS applied the notice and
challenge regulations in a manner inconsistent with the stat-
utory portability provision that allowed Musunuru to change
employers. We do not hold, however, that Musunuru was en-
titled to notice and an opportunity to respond, or to adminis-

---

[1] Our discussion of Musunuru's standing to administratively chal-
lenge the revocation of VSG's visa petition concerns Musunuru's standing
*before the agency*, not his Article III standing before the court, which he has.
See *Kurapati v. U.S. Bureau of Citizenship & Immigration Servs.*, 775 F.3d
1255, 1259–61 (11th Cir. 2014); *Patel v. U.S. Citizenship & Immigration Servs.*,
732 F.3d 633, 637–38 (6th Cir. 2013) (relying on *Stenographic Machs., Inc. v.
Reg'l Adm'r for Emp't & Training*, 577 F.2d 521, 527–28 (7th Cir. 1978)).

tratively challenge the revocation of VSG's visa petition. Instead, we hold that Musunuru's current employer, Crescent Solutions, was entitled to these things. We so hold because Congress intends for a nonimmigrant worker's new employer to adopt the visa petition filed by his old employer when the worker changes employers under the statutory portability provision. Thus, to give effect to Congress's intention, the new employer must be treated as the de facto petitioner for the old employer's visa petition. As the de facto petitioner, the new employer is entitled under the regulations to pre-revocation notice and an opportunity to respond, as well as to administratively challenge a revocation decision.

## I. Background

### A. The Employment-Based Visa Application Process

The Immigration and Nationality Act ("INA") provides a three-step process by which an alien who is already lawfully present in the United States through a nonimmigrant worker visa or status (commonly called H1-B) may become a permanent resident. The first two steps are completed by the worker's employer so that the employer may hire the worker on a permanent basis, rather than the temporary basis permitted by the worker's H1-B status. First, the employer must obtain a labor certificate from the Department of Labor that certifies that there are insufficient able, willing, qualified, and available workers, and that hiring the alien worker on a permanent basis will not adversely affect the wages or working conditions of similarly employed U.S. workers. 8 U.S.C. §§ 1153(b)(3)(C), 1182(a)(5)(A)(i). Second, the employer must file, and USCIS must approve, an immigrant visa petition that assigns the worker to one of the INA's immigrant visa preference categories for employment-based permanent residency.

8 U.S.C. §§ 1154(a)(1)(F), 1255(a)(2). The petition is also called
an I-140 after the name of the form used to file the petition:
Form I-140, Immigrant Petition for Alien Worker. *See* 8 C.F.R.
§ 204.5(a). The worker does not receive a visa upon approval
of the employer's I-140 petition, because there is a quota
where only a certain number of visas are made available per
country of origin each calendar quarter. 8 U.S.C. §§ 1151(a)(2),
1152(a). Instead, an approved I-140 petition makes the worker
eligible to receive a visa once one becomes available.

The third and final step must be completed by the worker:
he must apply for, and be granted, an adjustment of status to
permanent resident. 8 U.S.C. § 1255(a). The application is also
called an I-485 after the form used to file the application: Form
I-485, Application to Register Permanent Residence or Adjust
Status. *See* 8 C.F.R. § 204.5(n)(1). The worker may not file his
I-485 application until a visa is immediately available. 8 U.S.C.
§ 1255(a)(3); 8 C.F.R. § 245.2(a)(2). Visas are issued to eligible
workers as the visas become available and in the order in
which the workers' employers filed their I-140 petitions. 8
U.S.C. § 1153(e)(1). To maintain the proper order, USCIS as-
signs each approved I-140 petition a priority date based on the
date the petitioning employer filed its labor certification ap-
plication. 8 C.F.R. § 204.5(d).

To determine whether a visa is immediately available to
file their I-485 applications, nonimmigrant workers must con-
sult a monthly Visa Bulletin published by the Department of

State. 8 C.FR. § 245.1(g).[2] The Visa Bulletin is organized according to country of origin and visa preference category. If there are sufficient visas available for all known applicants from a specific country and of a specific preference category, then the Visa Bulletin lists that combination as "current," and all applicants matching that combination may file an I-485 application regardless of their priority date. If there are insufficient visas available for all known applicants of a specific combination, then the Visa Bulletin lists a cut-off date, and only those applicants who have priority dates earlier than the cut-off date may file an I-485 application. Sometimes, a cut-off date may retrogress, meaning that fewer visas are available than previously projected. When that happens to an applicant whose I-485 application is already filed, the applicant is forced to wait until the cut-off date again progresses past his priority date for his application to be adjudicated.

Before 2000, a worker had to remain with his sponsoring employer until his I-485 application was approved because the I-140 petition's approval was entirely contingent on the worker staying with the same employer. Under the statutory scheme, both the labor certificate and the I-140 petition belong to the employer. The employer is the petitioner for the I-140 petition; the worker is considered the petition's beneficiary. *See* 8 U.S.C. § 1154(a)(1)(F) ("Any employer desiring and intending to employ within the United States an alien entitled to classification under section 1153(b)(1)(B), 1153(b)(1)(C), 1153(b)(2), or 1153(b)(3) of this title may file a petition with the Attorney General for such classification."). *See also* 8 C.F.R.

---

[2] Current and past visa bulletins can be found online at https://travel.state.gov/content/visas/en/law-and-policy/bulletin.html (last visited August 3, 2016).

§ 204.5 (referring to the employer as "petitioner" and the worker as "beneficiary").

In 2000, Congress amended the INA with respect to H1–B nonimmigrant aliens by passing the American Competitiveness in the Twenty-First Century Act ("AC21"), Pub. L. 106-313, 114 Stat. 1251 (Oct. 17, 2000). The AC21's goal was to help employers acquire and retain the skilled workers necessary for the technological revolution that was beginning to pick up steam. S. Rep. 106-260, 2 (2000). Among other amendments, the AC21 added INA §§ 204(j) and 212(a)(5)(A)(iv), which made I-140 petitions and labor certifications portable to new employers for long-delayed applicants for adjustment of status:

> A petition under subsection (a)(1)(D) of this section for an individual whose application for adjustment of status pursuant to section 1255 of this title has been filed and remained unadjudicated for 180 days or more shall remain valid with respect to a new job if the individual changes jobs or employers if the new job is in the same or a similar occupational classification as the job for which the petition was filed.

8 U.S.C. § 1154(j); Pub. L. 106-313 § 106(c)(1). The AC21's portability provision for labor certificates is substantially similar. 8 U.S.C. § 1182(a)(5)(A)(iv); Pub. L. 106-313 § 106(c)(2). Under the AC21, a worker no longer has to remain with his sponsoring employer until his I-485 application is approved. In effect, the worker's new employer can use the previous employer's labor certification and I-140 petition to hire the worker (who is said to then "port" to the new employer), so long as the new

job is in the same or similar occupational classification as the previous one.

### B. Musunuru's Efforts

In 2004, Musunuru was working in the United States for VSG. On February 17, 2004, VSG filed a labor certification application seeking to employ Musunuru on a permanent basis as a Programmer Analyst. The Department of Labor granted VSG the labor certification. On March 23, 2006, VSG filed an I-140 petition seeking to classify Musunuru under the professional or skilled worker classification of 8 U.S.C. § 1153(b)(3)(A), commonly called EB-3. Four months later, USCIS approved the I-140 petition, assigning it a priority date of February 17, 2004, when VSG filed its labor certification application. This date was very important because it reserved his place in line as visas became available for immigrants from India.

A little over a year later, Musunuru filed his I-485 application when a visa became available to him. Before his application could be approved, however, the cut-off date for his category retrogressed past his priority date. Because Musunuru's priority date was no longer current, a visa was not available to him and approval of his I-485 application was delayed.

On January 1, 2010, after his I-485 application had been pending for more than 180 days, Musunuru took advantage of the AC21's portability provision and left VSG to accept a position with Crescent Solutions. Because Musunuru's job at Crescent Solutions was the same as that for which VSG filed its I-140 petition, Crescent Solutions did not apply for its own labor certificate or file its own I-140 petition, but relied on VSG's.

About a year after hiring Musunuru, Crescent Solutions applied for a new labor certificate so that it could promote Musunuru to the position of Computer Software Engineer. On January 31, 2011, the Department of Labor granted Crescent Solutions the certification. On March 16, 2011, Crescent Solutions filed a new I-140 petition seeking to classify Musunuru under 8 U.S.C. § 1153(b)(2) as an alien who is member of a profession holding an advanced degree or an alien of exceptional ability, commonly called EB-2. USCIS approved the petition a week later on March 23, 2011. Crescent Solutions' petition retained the earlier priority date from VSG's petition, February 17, 2004. *See* 8 U.S.C. § 204.5(e).

Now that Musunuru was classified under EB-2, a visa was immediately available to him, so that USCIS could adjudicate his I-485 application. (At the time, the cut-off date for EB-2 workers from India was over four years later than that for EB-3 workers from India.) Yet, because of a legal problem (see below), USCIS did not approve Musunuru's I-485 application. Instead, on March 12, 2012, USCIS amended its approval of Crescent Solutions' I-140 petition. USCIS changed the petition's priority date from February 17, 2004 to January 28, 2011, the date that Crescent Solutions filed its own labor certificate. With this later priority date, Musunuru had to wait—and still must wait—several more years for a visa to become available so that his I-485 application can be adjudicated. Whereas, if Crescent Solutions' I-140 petition had retained VSG's petition's earlier priority date, a visa would be available now.

USCIS amended the priority date for Crescent Solutions' petition because it had revoked VSG's labor certification and I-140 petition. In April 2011, the owners of VSG, two brothers, each pleaded guilty to unlawfully hiring aliens and mail

fraud involving an unrelated H1-B visa for a different employee. As part of their plea deal, they were permanently debarred from participating in the labor certification program. VSG dissolved about a month later. So it was that VSG was no longer in business when USCIS sent VSG a notice of intent to revoke the I-140 petition VSG filed on behalf of Musunuru. Based on the owners' convictions, USCIS revoked a number of VSG's I-140 petitions, Musunuru's included, and invalidated the labor certifications upon which the petitions were based. Being out of business, the company did not respond to the notice. For the same reason, VSG did not appeal the decision when notified of its right to an administrative appeal. USCIS sent neither Musunuru nor Crescent Solutions notice of its intent to revoke VSG's petition, so Musunuru did not learn of the revocation until well after the deadline to administratively appeal the action.

On July 5, 2012, USCIS sent Crescent Solutions a notice of intent to revoke the I-140 petition Crescent Solutions filed on behalf of Musunuru. The notice asserted that, based on the convictions of VSG's owners, Musunuru's work experience with VSG was not genuine and therefore the approval of Crescent Solutions' I-140 petition, which relied on that work experience, should be revoked. Crescent Solutions and Musunuru responded to the notice and, by demonstrating that Musunuru's employment experience with VSG was genuine, they were able to overcome USCIS's grounds for revoking the I-140 petition. Nevertheless, USCIS maintained the amended priority date of January 28, 2011, from Crescent Solutions' petition, rather than the earlier February 17, 2004 date from VSG's petition.

On September 4, 2013, USCIS finally issued a decision on Musunuru's I-485 application, but it was not the decision for which he had hoped. USCIS found that, since VSG's I-140 petition was revoked, Musunuru's application could not rely on VSG's earlier priority date. Instead, it could only rely on the later priority date from Crescent Solutions' petition. Consequently, USCIS denied Musunuru's I-485 application for the reason that there were no visas available for petitions with the later priority date at the time he filed his application.[3]

Musunuru moved for reconsideration of the decision. He argued that the earlier decision to revoke VSG's I-140 petition for fraud was erroneous and that he should have been given notice of USCIS's intent to revoke and an opportunity to respond. Had he been given an opportunity, he argued, he would have shown that VSG's I-140 petition on his behalf was not fraudulent (just as he had shown that his work experience with VSG was not fraudulent when defending Crescent Solutions' petition) and therefore he should have the benefit of

---

[3] USCIS's determination that no visas were available for Musunuru was not accurate, At the time Musunuru filed his I-485 application, the July 2007 Visa Bulletin listed his EB-3 category as current, meaning visas were available to all EB-3 applicants regardless of priority date. In fact, for whatever reason, the July 2007 Visa Bulletin listed all employment-based categories except unskilled labor as current even though the previous month's bulletin had listed several of the categories with cut-off dates over six years out. This resulted in a flood of I-485 applications (nearly 60,000 were filed before the bulletin's effective date). As a result, USCIS refused to accept any further applications until the beginning of the next fiscal year. This decision led to much outcry and threatened litigation, so USCIS agreed to accept applications under the July 2007 Visa Bulletin until August 17, 2007. Musunuru's application was filed on August 6, 2007. Because all visa preference categories were current at the time Musunuru filed his application, a visa was available to him at the time of filing.

VSG's petition's earlier priority date. He also argued that a visa was available at the time he filed his I-485 application.

On November 7, 2013, USCIS granted Musunuru's motion to reconsider. USCIS found that, before it had revoked VSG's I-140 petition, Musunuru had filed a request to transfer his I-485 application from VSG's petition to Crescent Solutions' petition. USCIS also found that a visa was available when he filed his application. For these reasons, USCIS reinstated Musunuru's application to pending status with the priority date from Crescent Solutions' petition. As for Musunuru's argument that the revocation of VSG's I-140 petition was erroneous, USCIS found that Musunuru lacked standing to contest the matter because he was the beneficiary, not the petitioner. It relied on 8 C.F.R. § 103.3(a)(1)(iii)(B), which defines an "affected party" for purposes of denials and appeals as "the person or entity with legal standing in a proceeding. It does not include the beneficiary of a visa petition." Under the current July 2016 Visa Bulletin, Musunuru needs a priority date before November 1, 2004, for his I-485 application to be adjudicated. That is over six years earlier than his present January 28, 2011, priority date.

Musunuru sought judicial review of USCIS's actions under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, and declaratory and injunctive relief under 28 U.S.C. § 2201. Specifically, he alleged that, by revoking VSG's petition without providing him notice and an opportunity to respond, USCIS violated its own notice regulations and his right to procedural due process protected by the Fifth Amendment. He also alleged that USCIS erred in concluding that he did not have standing to challenge the revocation. USCIS moved to dismiss for lack of jurisdiction under Rule 12(b)(1) and for

failure to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The district court denied USCIS's motion under Rule 12(b)(1), but granted its motion under Rule 12(b)(6). The district court found that, although it lacked jurisdiction to review USCIS's discretionary decision to revoke VSG's I-140 petition, it did have jurisdiction to review whether USCIS correctly followed its nondiscretionary procedures when it made the decision. On the merits, the district court ruled that USCIS did not err by failing to give Musunuru pre-revocation notice, nor did USCIS err by determining that Musunuru lacked standing to administratively challenge the revocation.[4] The regulations give these procedural rights to the petitioner or affected party, and the affected party is defined to not include the beneficiary of a visa petition. Finally, the district court ruled that USCIS's actions did not violate Musunuru's due process rights under the Fifth Amendment because the decision to revoke an approved I-140 is left to USCIS's discretion, and a person has no liberty or property interest in obtaining purely discretionary relief. Musunuru appeals.

## II. Discussion

### A. Standard of Review

We review a district court's determination that it had jurisdiction de novo. *Samirah v. O'Connell*, 335 F.3d 545, 548 (7th

---

[4] The district court mistakenly stated that Musunuru tried to appeal the revocation decision within USCIS. The record does not reflect, and Musunuru did not allege, that he administratively appealed the revocation. The record shows only that he sought to challenge the revocation in his motion for reconsideration of USCIS's decision to deny his I-485 application.

Cir. 2003). We also review de novo a district court's dismissal of a case under Rule 12(b)(6), accepting the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). A court reviewing an agency's action, findings, or conclusions under the APA must set aside those it determines to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. §§ 706(2)(A), 706(2)(D); *Sierra Club v. Marita*, 46 F.3d 606, 619 (7th Cir. 1995).

### B. Jurisdiction

USCIS argues that the district court lacked jurisdiction to decide the merits of Musunuru's petition for review. It is correct that 8 U.S.C. § 1252(a)(2)(B)(ii) strips us of jurisdiction to review "any … decision or action" that is "in the discretion of the Attorney General or the Secretary of Homeland Security" as specified by Subchapter II of U.S. Code Title 8, Chapter 12. Furthermore, 8 U.S.C. § 1155, which falls under Subchapter II, specifies that "[t]he Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title." We have held that "the decision to revoke a previously approved visa petition pursuant to 8 U.S.C. § 1155 is expressly left to the discretion of the [Secretary]. Therefore, 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of such decisions." *El-Khader v. Monica*, 366 F.3d 562, 568 (7th Cir. 2004).

However, in *Calma v. Holder*, 663 F.3d 868 (7th Cir. 2011), we also held:

> The court's inability to review the underlying claim for relief is, standing alone, an insufficient basis to preclude review of a related procedural motion. Instead, judicial review is foreclosed by § 1252(a)(2)(B)(i) only if the agency's rationale for denying the procedural request also establishes the petitioner's inability to prevail on the merits of his underlying claim.

*Id*. at 876 (internal quotation marks and citation omitted). Although *Calma* dealt with § 1252(a)(2)(B)(i), which prevents us from reviewing decisions made under certain enumerated sections of the INA, the same logic applies to § 1252(a)(2)(B)(ii). Here, we are reviewing USCIS's application of its mandatory procedures governing pre-revocation notice and post-revocation challenges, 8 C.F.R. §§ 103.2(b)(16)(i), 103.3(a)(1)(iii)(B), & 205.2(b)–(c). USCIS's rationale for denying Musunuru these procedures was that he is not the petitioner. That rationale, by itself, does not prevent Musunuru from prevailing on the merits of his underlying claim, which is that the I-140 petition filed on his behalf by VSG was not fraudulent and should not have been revoked. Therefore, judicial review is not foreclosed. In other words, USCIS's rationale concerns only the regulatory procedures and not the merits of its decision to revoke the petition. Musunuru does indeed contend that he can prevail on the merits of his underlying claim once he is given the opportunity to challenge the revocation, but we are not reviewing that contention. On the contrary, we are reviewing USCIS's decision to deny him the opportunity to challenge the revocation. Ergo, we have jurisdiction to review Musunuru's claims. *See Kurapati v. U.S. Bureau of Citizenship & Immigration Servs.*, 775 F.3d 1255 (11th Cir. 2014).

### C. Musunuru's Statutory Claim

The regulations are clear on this point: It is the visa petitioner who must receive notice of USCIS's intent to revoke an I-140 petition, not the beneficiary. The pertinent regulation is 8 C.F.R. § 205.2, entitled "Revocation on notice." It states that the revocation of an I-140 petition "will be made only *on notice to the petitioner or self-petitioner*," and that the "*petitioner or self-petitioner must be given the opportunity to offer evidence* in support of the petition or self-petition and in opposition to the grounds alleged for revocation of the approval." 8 C.F.R. § 205.2(b) (emphasis added). Likewise, § 103.2, upon which Musunuru heavily relies, grants the visa petitioner, not the beneficiary, notice of an impending adverse decision and an opportunity to rebut derogatory information:

> If the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which *the applicant or petitioner* is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered, except [for determinations of statutory eligibility or discretionary determinations based on classified information].

8 C.F.R. § 103.2(b)(16)(i) (emphasis added). Section 103.2's use of the terms applicant and petitioner does not implicitly refer

to beneficiaries, because the regulation elsewhere distinguishes between applicants, petitioners, and beneficiaries. 8 C.F.R. § 103.2(b)(9).[5]

Furthermore, the regulations are clear that a beneficiary is not given an opportunity to challenge the revocation of an I-140 petition through a motion to reconsider, though a petitioner is. The regulation governing motions to reconsider an action or reopen a proceeding, § 103.5, describes motions to reconsider as "filed by an applicant or petitioner" and allows an official to reconsider a prior decision only for an "affected party." 8 C.F.R. § 103.5(a)(1)(i). Section 103.3 explicitly defines "affected party" to not include a visa petition beneficiary: "For purposes of this section and §§ 103.4 and 103.5 of this part, affected party (in addition to the Service) means the person or entity with legal standing in a proceeding. *It does not include the beneficiary of a visa petition.*" 8 C.F.R. § 103.3(a)(1)(iii)(B) (emphasis added).

USCIS contends that there is no ambiguity in these regulatory provisions. It argues further that, if there is any ambiguity, the regulations can be reasonably read to exclude visa beneficiaries, such as Musunuru, from the provisions providing prior notice of visa revocations and an opportunity to challenge those decisions. Therefore, according to USCIS, we must defer to their interpretation. *See Auer v. Robins*, 519 U.S. 452, 461 (1997). On the other hand, Musunuru argues that

---

[5] Musunuru relies on 8 C.F.R. § 103.2 because it applies to "the applicant or petitioner" and Musunuru is an applicant in terms of his I-485 application. This is a misreading of the regulation. Section 103.2 deals with the submission and adjudication of benefits requests, not the revocation of visa petitions, and being the applicant for his I-485 application does not make him the petitioner for VSG's I-140 petition.

USCIS's interpretation is unreasonable because it conflicts with the clear intent of Congress to give visa beneficiaries greater rights and protections by enacting the AC21. Therefore, he says that USCIS's interpretation is merely persuasive authority to which we are not required to defer. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

According to Musunuru, after he took advantage of the AC21's porting provision, 8 U.S.C. § 1154(j), and moved to Crescent Solutions, he became the only party with a vested interest in the continued validity of the labor certification and I-140 petition filed by VSG on his behalf. He also claims that he was the only party with a vested interest in retaining the earlier priority date from VSG's petition. These interests, Musunuru continues, make beneficiaries "affected parties" under 8 C.F.R. § 103.3(a)(1)(iii)(B), thereby giving beneficiaries standing before USCIS. This standing then entitles beneficiaries to notice and an opportunity to respond to pending revocation decisions. Thus, he argues, USCIS's interpretation of the regulations is arbitrary because it fails to account for the change the AC21 worked upon the INA through § 1154(j). Finally, Musunuru claims that USCIS's refusal to provide him such notice and opportunity violated his Fifth Amendment right to procedural due process.

Musunuru is correct that USCIS's interpretation is unreasonable because it fails to take into account the changes the AC21 wrought through the addition of the porting provision, § 1154(j). Yet, he is wrong about being the only party with a vested interest in the continued validity of the I-140 petition filed by VSG. Musunuru's new employer, Crescent Solutions, also had a vested interest in the petition's validity. For a little more than a year, until it filed its own I-140 petition, Crescent

Solutions depended on VSG's petition to employ Musunuru. In short, Crescent Solutions adopted VSG's I-140 petition. And, although Crescent Solutions eventually filed its own petition on behalf of Musunuru, it still relied on VSG's petition for that petition's earlier priority date, which would have allowed the uncertainty surrounding Musunuru's permanent employment status to be removed much sooner.[6]

An examination of the AC21 reveals Congress's intent for the successor employer to adopt the I-140 petition filed on behalf of the porting beneficiary. Section 1154(j) does not require the beneficiary's successor employer to file a new petition, but allows the successor employer to rely on its predecessor's petition. Contrast this with the AC21's portability provision for H1-B status,[7] which expressly requires a successor employer to file a new H1-B petition before a nonimmigrant worker can port to the employer: "A nonimmigrant alien [with H1-B status] is authorized to accept new employment upon the filing by the prospective employer of a new petition on behalf of

---

[6] Normally, a nonimmigrant worker is allowed to remain in the United States on H1-B status for no more than six years. 8 U.S.C. § 1184(g)(4). To prevent American businesses from being disrupted by this limitation, the AC21 included a provision that allows the granting of extensions to EB-1, EB-2, and EB-3 petition beneficiaries until their I-485 applications can be adjudicated. 8 U.S.C. § 1184 note (2000) (One-Time Protection Under Per Country Ceiling); Pub. L. 106-313, § 104(c) (Oct. 17, 2000); S. Rep. 106-260, 22 (2000). Even though an EB-2 petition beneficiary may now remain in the United States for however long it takes for his I-485 application to be adjudicated, his potential for permanent employability is nonetheless uncertain.

[7] In addition to providing portability for I-140 petitions, the AC21 also provided increased portability for H1-B visas. Pub. L. 106-313 § 105(a) (amendment subsequently amended as 8 U.S.C. § 1184(n)).

[the] nonimmigrant … ." 8 U.S.C. § 1184(n)(1). There is no
such requirement before an I-140 beneficiary can port. Fur-
thermore, the portability of an H1-B status is completely de-
pendent on the successor employer's new petition: "Employ-
ment authorization shall continue for such alien until the new
[H1-B] petition is adjudicated. If the new petition is denied,
such authorization shall cease." *Id*. This is not the case for I-
140 petitions. Rather, the AC21 separates a ported petition, as
it relates to the new job, from the predecessor employer that
filed it. USCIS understands this; its Adjudicator's Field Man-
ual explains that, because of the AC21, a predecessor em-
ployer is not able to withdraw its petition once the worker has
ported: "if the [predecessor] employer withdraws the ap-
proved Form I-140 on or after the date that the Form I-485 has
been pending 180 days, the approved Form I-140 *shall remain
valid under the provisions of §106(c) of AC21*." USCIS Adj. F.
Man. 20.2(c), Petition Validity (emphasis added). The only
time an adopted I-140 petition does not survive a predecessor
employer is when it is invalid from the start, that is, when it
is fraudulent. *Id*. ("If at any time the USCIS revokes approval
of the Form I-140 based on fraud, the alien will not be eligible
for the job flexibility provisions of §106(c) of AC21 and the
adjudicating officer may, in his or her discretion, deny the at-
tached Form I-485 immediately."). In such a case, neither will
the petition's priority date survive. USCIS Adj. F. Man.
22.2(d)(1), Employment-Based Immigrant Visa Petitions
(Form I-140).

Clearly, then, Congress intends for the successor employer
to adopt the ported I-140 petition filed by the worker's previ-
ous employer. Since "the intent of Congress is clear, that is the
end of the matter; for the court, as well as the agency, must

give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). To give effect to Congress's intent, the regulations must be read to include the successor employer as the petitioner. Thus, under 8 C.F.R. § 205.2, USCIS should have given Crescent Solutions notice of their intent to revoke the approval of VSG's I-140 petition and provided Crescent Solutions with an opportunity to offer evidence in support of the petition and in opposition to the grounds alleged for revocation of the approval. Furthermore, Crescent Solutions was the petitioner and an "affected party" under 8 U.S.C. § 103.3(a)(1)(iii)(B), and therefore possessed standing before USCIS to file a motion to reconsider the revocation under 8 C.F.R. § 103.5(a)(1)(i).

The Second Circuit recently decided a case very similar to ours: *Mantena v. Johnson*, 809 F.3d 721 (2d Cir. 2015). Mantena was also an employee of VSG, which filed an I-140 petition on her behalf. Like Musunuru, Mantena filed her I-485 application in response to the July 2007 Visa Bulletin and experienced a long delay in its adjudication. She, too, took advantage of the AC21's portability provision and moved to another employer around the beginning of 2010. When USCIS revoked VSG's I-140 petition filed on her behalf, it also did so after sending notice only to VSG. And, USCIS also relied on the exclusion of visa beneficiaries from the definition of "affected party" in 8 C.F.R. § 103.3(a)(1)(iii)(B) to deny Mantena's multiple motions for reconsideration. *Id*. at 725–727. Mantena's case differs from Musunuru's only in that Mantena's new employer never filed a new I-140 petition on her behalf, so that she lost her I-485 application as well as her priority date. *Id*. at 726–27. The Second Circuit held:

> USCIS acted inconsistently with the statutory
> portability provisions of AC-21 by providing
> notice of an intent to revoke neither i) to an alien
> beneficiary who has availed herself of the port-
> ability provisions to move to a successor em-
> ployer nor ii) to the successor employer, who is
> not the original I-140 petitioner, but who, as
> contemplated by AC-21, has in effect adopted
> the original I-140 petition.

*Id*. at 736. The Second Circuit declined to hold which of the two, the beneficiary or the successive employer, was entitled to notice, and instead left it to the district court to decide on remand. *Id*. We agree with our sister circuit that USCIS's actions were inconsistent with the AC21's statutory portability provisions, but we hold further that it is the successor employer that is entitled to notice and an opportunity to respond.[8] More specifically, we hold that USCIS, by not treating

---

[8] The Second Circuit declined to hold that USCIS is required to give notice to the successor employer, despite the employer's adoption of the petition, because there is no regulation requiring the successive employer to be identified to USCIS. *Mantena*, 809 F.3d at 736 n.14. We do not see the lack of such a regulation as an impediment. There is also no regulation requiring a beneficiary to inform USCIS that he desires, or has in fact, ported to a new employer. Instead, USCIS has a non-regulatory procedure for submitting a request to change employers under INA 204(j), 8 U.S.C. § 1154(j), which requires the identification of the successor employer:

> The alien beneficiary … must send a letter from the new
> intended permanent employer specifying the job title and
> duties of the offered position, the minimum educational
> or training requirements, the date the alien beneficiary
> began (or will begin) employment and the offered salary
> or wage. The letter must be issued and signed by the ap-

the successor employer as the de facto petitioner, failed to comply with the applicable regulations in light of the statutory portability provisions of the AC21.

### D. Musunuru's Fifth Amendment Claim

This leaves us with Musunuru's Fifth Amendment due process claim, in which he argues that USCIS's application of the regulations denied him his right to procedural due process as protected by the Fifth Amendment. The district court rightly held that the Fifth Amendment did not apply. Musunuru did not have a protected liberty or property interest in the continued validity of VSG's visa petition because the decision to revoke the petition was left to the discretion of USCIS. *See Dave v. Ashcroft*, 363 F.3d 649, 653 (7th Cir. 2004) ("[I]n immigration proceedings, a petitioner has no liberty or property interest in obtaining purely discretionary relief[.]"); *Joseph v. Landon*, 679 F.2d 111, 115 (7th Cir. 1982) (holding that an alien "d[oes] not have a vested right upon approval of [a] visa petition").

Musunuru argues that when he changed employers in compliance with the AC21's portability provision, he was entitled, as a matter of right, to retain VSG's approved visa petition and labor certification because the AC21 provides that a ported visa petition and labor certification "shall remain valid

---

propriate authority within the new employer's organization who is authorized to make or confirm an offer of permanent employment.

USCIS, *Petition Filing and Processing Procedures for Form I-140, Immigrant Petition for Alien Worker*, https://www.uscis.gov/forms/petition-filing-and-processing-procedures-form-i-140-immigrant-petition-alien-worker (last visited August 3, 2016).

with respect to a new job." 8 U.S.C. §§ 1154(j), 1182(a)(5)(A)(iv). Therefore, he argues, his ability to retain VSG's ported visa petition and labor certificate was not discretionary, and he had a protected property interest in their continued validity.

Musunuru's argument is unpersuasive because he misinterprets the language of the portability provisions. The AC21 does not make a ported I-140 petition and labor certificate valid, it only ensures that they will "remain" valid despite the worker leaving the job for which they were filed. *Id*. Nor does the AC21 make a ported petition impervious to revocation. USCIS may still revoke an I-140 petition at its discretion, 8 U.S.C. § 1155, provided, of course, that it follows the required procedures.

### III. Conclusion

Because USCIS applied the regulations in a manner inconsistent with the statutory portability provisions of the AC21 and should have provided to Musunuru's current employer notice and an opportunity to respond, we **REVERSE** and **REMAND**.