**Xiao Jia LUO, et al., Plaintiffs,**

v.

**Dona COULTICE, Director, California Service Center of the Immigration and Naturalization Service, Defendant.**

No. 01–04436 ABC.

United States District Court, C.D. California.

Dec. 3, 2001.

Donald Ungar, Esq., San Francisco, CA, for Plaintiffs.

Leon Weidman, Esq., Sara Robinson, Esq., Office of U.S. Attorney, Los Angeles, CA, for Defendant.

**ORDER RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

COLLINS, District Judge.

This case arises from Plaintiffs' applications for immigrant visas under the "employment creation" provision of Section 203(b)(5) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1153(b)(5). The American consular official in Guangzhou, China, denied Plaintiffs' applications and returned those applications to the Immigration and Naturalization Service ("INS") in September 2000. The INS has not acted on those petitions, and Plaintiffs filed this instant Complaint for mandatory relief, asking this Court to order Defendant Coultice to review Plaintiffs' applications and return them to the consulate in China. Defendant's Motion to Dismiss the Complaint or, in the alternative, for Summary Judgment came on regularly for hearing before this Court on December 3, 2001. After considering the materials submitted by both parties, the argument of counsel, and the case file, the Court hereby GRANTS the Motion for Summary Judgment.

## I. FACTUAL BACKGROUND

Plaintiffs Xiao Jia Luo and Jing Hui Li ("Plaintiffs") are citizens of China who have applied for immigrant visas to enter the United States as permanent residents under the "employment creation" provision of the INA. *See* Complaint ¶ 1. That section provides for visas for aliens who have established or invested in a new commercial enterprise that will employ 10 United States citizens or lawful permanent residents. 8 U.S.C. § 1153(b)(5)(A); *see also* 8 C.F.R. § 204.6 (requirements for a visa petition based on employment creation). Plaintiffs' applications were first consid-

ered by the INS at the California Service Center ("CSC"), of which Defendant Coultice is the director, in Laguna Niguel, California. *See* Complaint ¶ 2; 8 U.S.C. § 1154(a)(1)(H) ("Any alien desiring to be classified under section 1153(b)(5) of this title may file a petition with the Attorney General for such classification.").

The CSC approved the petitions in August 1999, and forwarded them to the United States consulate in Guanghzhou, China. *See* Complaint ¶ 2; 8 U.S.C. § 1154(b) ("[T]he Attorney General shall . . . approve the petition and forward one copy thereof to the Department of State. The Secretary of State shall then authorize the consular officer concerned to grant the preference status."). The consular officer in China rejected the applications and returned the petitions to the INS in September 2000. *See* Complaint ¶ 3; 8 U.S.C. § 1201(g). The CSC has not yet acted on those returned petitions. *See* Complaint ¶ 8.

Defendant has presented evidence that there is a significant backlog at the CSC. The CSC is responsible for the receipt, processing, and adjudication of immigrant and nonimmigrant visa petitions and other applications filed in the western United States. Declaration of Mary Agnelly ("Agnelly Decl.") ¶ 3. Mary C. Agnelly, the Assistant Center Director, has testified by declaration that in Fiscal Year 2000, the CSC received more than 1.2 million applications and petitions. *Id.* As of August 15, 2001, the CSC had received 988,000 during FY 2001. *Id.* These figures represent a "tremendous increase" in the number of applications and petitions relative to prior years, resulting in the backlog. *Id.* at ¶ 6.

The INS has given high priority to the adjudication of naturalization petitions, reducing the time for review of those petitions from 12 months to six to nine months. *Id.* at ¶ 8. The INS has also given priority to Green Card renewals and adjustment of status applications. *Id.* at ¶¶ 9–10. In her declaration, Agnelly explained that "[w]hen INS sets a high priority on the processing or adjudication of a particular type of application or petition and redirects resources to that process, there will be a concomitant decrease in resources left to process and adjudicate the many other types of applications and petitions." *Id.* at ¶ 11.

Some types of applications, primarily nonimmigrant employment applications, can receive priority review when accompanied by a "premium processing" form and a $1,000 fee. *Id.* at ¶ 11 & Ex. 6. Also, expedited processing is available on a **discretionary** basis if the applicant demonstrates: (1) significant humanitarian concerns, (2) significant financial loss, (3) emergency, and/or (4) compelling interest of the INS. *Id.* at ¶ 15. Generally, however, the CSC adjudicates applications and petitions in the order in which they are received. *Id.* at ¶ 14.

Agnelly testified in her declaration that there is no statutory or regulatory time limit for the review of petitions returned by American consulates, nor have they been designated by the INS as a national priority. *Id.* at ¶ 18. The INS places the returned petitions in the queue of returned petitions. The INS reviews and adjudicates consular returns in the order in which they were returned from the consulates. Upon review of a returned petition, the agency will either revoke, revalidate, or take no action on the initial petition, as appropriate. *Id.* at ¶ 19. Agnelly testified that Plaintiffs have not sought expedited review of their returned petitions, and their petitions are still within the current average processing time for review of returned petitions. *Id.* at ¶ 20.

## II. PROCEDURAL HISTORY

Plaintiffs filed the Complaint on May 16, 2001. Plaintiffs seek a writ of mandamus under 28 U.S.C. § 1361 ordering Defendant to act on their petitions. On September 28, 2001, Defendant filed the instant Motion to Dismiss or, in the alternative, for Summary Judgment (the "Motion"), noticed for hearing on October 29, 2001. Plaintiffs filed their Opposition on October 15, 2001. Defendant filed a Reply on October 22, 2001. Due to court congestion, the Court continued the hearing to November 19, 2001. The parties stipulated to continue the hearing again to December 10, 2001, then stipulated to move the hearing up to December 3, 2001.

## III. LEGAL STANDARD

Defendant filed the instant Motion as one to dismiss the complaint or, in the alternative, for summary judgment. Both parties have submitted additional materials that are not "alleged in [the] complaint." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994). In order to consider these materials, the Court must treat the Motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b). Because Plaintiffs had notice that Defendant was alternatively seeking summary judgment, *see* Motion at 1:17–20, the Court finds that there is no need to allow additional time for submission of materials and proceeds to consider the Motion.

The party moving for summary judgment has the initial burden of establishing that there is "no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978); *Fremont Indemnity Co. v. California Nat'l Physician's Insurance Co.*, 954 F.Supp. 1399, 1402 (C.D.Cal.1997).

In a case such as this, where the opponent has the burden of proof at trial, the moving party has no burden to negate the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party does not have the burden to produce *any* evidence showing the absence of a genuine issue of material fact. *Id.* at 325, 106 S.Ct. 2548. "Instead, . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* (citations omitted).

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings . . . [T]he adverse party's response . . . *must set forth specific facts* showing that there is a genuine issue for trial." Fed. R. Civ. Pro. 56(e) (emphasis added). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish the essential elements to that party's case, and on which that party would bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in favor of the nonmovant. *Id.* at 248, 106 S.Ct. 2505. However, the court must view the evidence presented "through the prism of the substantive evidentiary burden." *Id.* at 252, 106 S.Ct. 2505.

## IV. DISCUSSION

In this case, there are no disputed issues of fact. The parties agree on the status of

Plaintiffs' immigrant visa applications. The only question is whether, as a matter of law, they are entitled to seek (and, concomitantly, whether this Court has jurisdiction to grant) relief ordering Defendant to act on the petitions. Accordingly, summary judgment is appropriate.

## A. Writs of Mandamus

 "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, mandamus is an extraordinary remedy. *Barron v. Reich,* 13 F.3d 1370, 1374 (9th Cir.1994) (citing *Stang v. IRS,* 788 F.2d 564, 565 (9th Cir.1986)). A district court may issue a writ of mandamus under § 1361 "only when (1) the plaintiff's claim is 'clear and certain'; (2) the defendant official's duty to act is ministerial, and 'so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." *Id.* (quoting *Fallini v. Hodel,* 783 F.2d 1343, 1345 (9th Cir.1986)). As a general rule, "mandamus may not be used to impinge upon an official's legitimate use of discretion." *Id.* at 1376. The only exception exists when "statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised ... have been ignored or violated." *Id.* (internal quotations and citations omitted).

## B. Plaintiffs' Complaint

 Although Plaintiffs have brought suit against the INS, through the Director of a local service center, their real quarrel is with the consular officials in China who denied their applications. *See* Declaration of Eugene Chow ¶ 7 ("Mr. Tarver was acting ultra vires and usurping the role of the INS"); ¶ 13 ("he was acting beyond his authority"); ¶ 22 ("My pleas fell on deaf ears. The petitions were returned to the INS's California Service Center for review and possible revocation."). However, Plaintiffs cannot challenge the ultimate decision of the American consulate to deny the applications. Neither INS nor this court has any power to review visa decisions of consular officials. *See, e.g., Li Hing of Hong Kong, Inc. v. Levin,* 800 F.2d 970 (9th Cir.1986) ("[I]t has been consistently held that the consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review.").[1]

 This case is easily resolved under the Ninth Circuit's decision in *Patel v. Reno,* 134 F.3d 929 (9th Cir.1997) (as amended). In that mandamus action arising from a visa petition, the court held that "summary judgment against all entities and officials without power to issue a visa was properly granted by the district court." 134 F.3d at 933. The Patels requested that the district court require the non-consular defendants, including former Attorney General Janet Reno, the INS, and the local district director of the INS, "to refrain from hindering the State Department's issuance of the immigrant visas." *Id.* Plaintiffs request essentially the same relief here, in asking this Court to require Defendant Coultice to act on their previously-approved returned petitions. However, the Ninth Circuit held in *Patel* that "mandamus is an inappropriate reme-

---

1. The Court does not rule out the possibility that a mandamus action might lie against the consular officials in China if they had, in fact, considered impermissible evidence in violation of statutory or regulatory authority. *See*

*Patel v. Reno,* 134 F.3d 929, 932 n. 1 (9th Cir.1997) (as amended). Defendant Coultice is not the proper respondent for such a claim, however.

dy with regard" to non-consular officials, whose duties were discretionary. *Id.* The Court here finds that mandamus cannot lie against Defendant Coultice.[2]

Plaintiffs have not identified any statutory or regulatory provisions requiring Defendant Coultice to act on their returned petition, much less to act within a certain period of time. It is possible that a district court could issue a writ of mandamus, under the reasoning of *Patel,* to compel the INS to act on an **initial** petition that has been suspended because the statutory and regulatory language suggest that the INS has some obligation to act on petitions. *See* 8 U.S.C § 1154(b) ("[a]fter an investigation ... the Attorney General **shall,** if he determines ... that the alien in behalf of whom the petition is made ... is eligible for preference under subsection (a) or (b) of section 1153 of this title, approve the petition") (emphasis added); 8 C.F.R. § 103.2(b)(19) ("An applicant or petitioner **shall** be sent a written decision on his or her application, petition, motion, or appeal.") (emphasis added). But Plaintiffs' returned applications have been pending for only one year, which is within the average processing time, *see* Agnelly Decl. at ¶ 20, not the eight years for which the applicants in *Patel* had been waiting. More importantly, the Court does not find any statutory language obligating the INS to approve or reject petitions returned by consulate officials. In fact, Agnelly testified in her deposition that the INS may "take no action." Agnelly Decl. at ¶ 19. If the INS has no obligation to act on the returned petitions at all, it certainly has no obligation to act within a certain period of time. Because the INS has no duty to act, this Court has no jurisdiction to issue a writ of mandamus.

The Court recognizes that Plaintiff Luo's son may lose his eligibility to enter the United States with his father, if Luo's petition is ultimately approved after the son's twenty-first birthday. *See* Chow Decl. ¶ 24. However compelling this reason may be, it does not justify exercise of the Court's mandamus jurisdiction. Plaintiff Luo must take this issue up through the agency's normal administrative procedures.

## V. CONCLUSION

Because Defendant has not failed to carry out a mandatory, nondiscretionary duty owed to Plaintiffs, the Court has no jurisdiction to order a writ of mandamus under § 1361. Accordingly, the Court HEREBY grants Defendant's Motion for Summary Judgment.

**SO ORDERED.**

---

2. In *Patel,* the plaintiffs' visa applications had been "suspended" by the consulate in India for eight years pending denaturalization proceedings in the INS. The Ninth Circuit found that the consulate had a duty to either accept or reject the application and could not merely suspend it. 134 F.3d at 932–33. Even if Plaintiffs' claim here were not barred by the *Patel* court's reasoning with regard to the INS defendants, *Patel* is inapposite. Plaintiffs' petition has only been pending for a year, not eight. There is no evidence that consideration of the petition has been suspended. Rather, all the evidence indicates that it is making its way in the normal (albeit slow) fashion through the CSC. Finally, Agnelly has testified that the INS may simply "take no action" on a returned petition. Agnelly Decl. at ¶ 19.