In the

# United States Court of Appeals
### For the Seventh Circuit

---

No. 15-2982

SAMIRA HAZAMA and AHMED ABDEL HAFIZ GHNEIM,

*Plaintiffs-Appellants*,

*v.*

REX W. TILLERSON, Secretary of State, *et al.*,

*Defendants-Appellees*.

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 4002 — **Milton I. Shadur**, *Judge*.

---

ARGUED DECEMBER 2, 2016 — DECIDED MARCH 20, 2017

---

Before WOOD, *Chief Judge*, and EASTERBROOK and
WILLIAMS, *Circuit Judges*.

WOOD, *Chief Judge*. In an effort to seek judicial review of a
consular official's unfavorable decision on a visa application,
Samira Hazama and Ahmed Abdel Hafiz Ghneim filed a pe-
tition for a writ of mandamus in the district court for the
Northern District of Illinois, where Hazama resides. The dis-
trict court concluded that it lacked subject-matter jurisdiction

over the petition, because it thought that review was pre-
cluded under the Supreme Court's decisions in *Kleindienst v.
Mandel*, 408 U.S. 753 (1972), and *Kerry v. Din*, 135 S. Ct. 2128
(2015). The district court was correct that this case cannot go
forward, but mistaken to think that the problem was jurisdic-
tional. In *Morfin v. Tillerson*, No. 15-3633, decided today, we
concluded that plaintiff loses on the merits. The same result is
proper here, both for the reasons stated in *Morfin* and because
the criteria for mandamus relief have not been met. See *United
States v. Vinyard*, 529 F.3d 589, 591 (7th Cir. 2008) (mandamus
proper only if the order would inflict irreparable harm, is not
effectively reviewable at the end of the case, and so far ex-
ceeds the bounds of judicial discretion that it is usurpative, in
violation of a clear and indisputable legal right, or patently
erroneous).

Hazama is a U.S. citizen; she is married to Ghneim, who is
a citizen of the Palestinian Authority and currently resides
there. Hoping to obtain a permanent resident visa for
Ghneim, Hazama filed an I-130 Petition for Alien Relative
with the U.S. Citizenship and Immigration Service of the De-
partment of Homeland Security (USCIS). Her petition was ap-
proved by USCIS on August 25, 2011, but that alone did not
assure Ghneim's right to immigrate to the United States. First,
he had to wait until a visa number became available, then
(while still outside the country) he had to appear for an inter-
view with a consular officer, and ultimately he had to file form
I-485, the Application to Register Permanent Residence or Ad-
just Status.

Ghneim never made it to the end of the line. He showed
up for his interview at the U.S. Consulate in Jerusalem on Jan-
uary 24, 2013. The consular officer denied the application for

three reasons: the commission of a crime of moral turpitude, 8 U.S.C. § 1182(a)(2)(A)(i)(I); previous removal from the United States, *id.* § 1182(a)(9)(A)(ii); and unlawful presence in the United States, *id.* § 1182(a)(9)(B)(i)(II). Ghneim tried to address these grounds, but his petition for a waiver of the "previously removed" and "unlawful presence" grounds was ultimately denied. In the meantime, on January 22, 2015, a consular officer again denied Ghneim's application, this time for having personally engaged in terrorist activities. See 8 U.S.C. § 1182(a)(3)(B)(i).

Hazama and Ghneim filed the present Complaint for Writ of Mandamus on May 5, 2015. In it, they attack only the terrorism ground for denying the visa. The omission of the other three grounds is perplexing, because it would do little good to set aside one ground if there are three alternate grounds for upholding the agency's decision. Their choice may reflect the assumption that the three omitted grounds may be waivable. We do not know, and in light of our disposition of the appeal, we need not inquire further. For present purposes we confine ourselves to the applicability of the terrorism ground to Ghneim.

The Complaint also seeks declaratory and injunctive relief under the Administrative Procedure Act, based on the government's alleged failure to adjudicate Ghneim's application. Finally, it asserts that the refusal was not facially legitimate and bona fide. The government moved to dismiss, both for lack of subject-matter jurisdiction and for failure to state a claim. The district court held a hearing on the government's motion on August 26, 2015, but despite her awareness that the court had scheduled this hearing—reflected in her effort on August 20 to seek a postponement—counsel for Hazama and

Ghneim did not attend. In the end, however, counsel's inability to attend made little difference. The district court, noting that the petitioners had relied heavily on the Ninth Circuit's decision in *Din* and that the Supreme Court had vacated that ruling, found that the consular official's reliance on the terrorism provision satisfied all relevant legal standards. Hazama and Ghneim have appealed from that decision.

The Supreme Court has consistently recognized that unadmitted, nonresident aliens have no free-standing constitutional right to enter the United States. See *Mandel*, 408 U.S. at 762. Nothing in *Din*, which admittedly failed to produce an authoritative opinion of the Court, casts any doubt on that proposition. Congress has delegated broad power to the Executive Branch to decide who will have the privilege of entering. *Id*. at 770. In general, courts have no authority to second-guess the Executive's decisions—rulings that are typically made by consular officers of the Department of State. See *Samirah v. Holder*, 627 F.3d 652, 662 (7th Cir. 2010).

That said, the Court has never entirely slammed the door shut on review of consular decisions on visas. The language in *Mandel* suggests at least two possible exceptions to the general norm of nonreviewability: "We hold that when the Executive exercises [the power to admit] negatively on the basis of *a facially legitimate* and *bona fide* reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant." 408 U.S. at 770 (emphasis added). In addition, as the final allusion to the First Amendment implies, some courts have held that if a visa denial affects the constitutional rights of American citizens, then it may be reviewable. *Cardenas v.*

*United States*, 826 F.3d 1164, 1169 (9th Cir. 2016); see also *Din*, 135 S. Ct. at 2141–42 (dissenting opinion of Breyer, J., joined by Ginsburg, Sotomayor, and Kagan, JJ., recognizing this right); *Id.* at 2139 (concurrence in judgment of Kennedy, J., joined by Alito, J., assuming arguendo that such a right exists).

Like the concurring Justices in *Din*, we can assume for the sake of argument that Hazama has enough of an interest in the grant of a visa to her husband that this case can go forward. Yet that assumption does nothing to meet her greater challenge, which is to show that the consular decision was not facially legitimate and bona fide. The act that prompted the consular officer to find that Ghneim had engaged in "terrorism" was admittedly minor, when compared with the worst terrorist acts one can imagine. As a 13-year-old boy in Palestine, Ghneim threw rocks at Israeli soldiers; the latter were armed with automatic rifles. Citing several other cases that involved rock-throwing, Hazama urges us to find that his actions were so inconsequential that they cannot suffice as a facially legitimate and bona fide reason for the visa denial. On one point we agree with her: this was a discretionary call, and it would not have been outside the consular officer's discretion to consider this as an act of juvenile rebellion rather than an act of terrorism.

The Supreme Court has made it clear, however, that whatever residual authority the courts have to review these decisions cannot be triggered by every possible recharacterization of an act. *Mandel*, *Din*, and all of the earlier cases are premised on the *non*-reviewability of these decisions, and a recharacterization exception would open the door to plenary reviewability—most things, after all, are open to interpretation. The

same problems would arise if we were to accept the suggestion of *amicus curiae* and adopt a rule under which we would examine whether the officer "properly construed and applied" the relevant provisions of law. All we can do is to look at the face of the decision, see if the officer cited a proper ground under the statute, and ensure that no other applicable constitutional limitations are violated. Once that is done, if the undisputed record includes facts that would support that ground, our task is over.

We found that additional support in *Morfin*, and we find it here as well. The consular officer in Jerusalem knew several things before making his decision: first, this particular act of rock-throwing took place in one of the least settled places in the world—a place where peace efforts have failed for 70 years; second, rocks are not benign objects—to the contrary, they can be lethal, as the barbaric practice of stoning illustrates; third, Ghneim did not deny that he had thrown the rocks; and fourth, Ghneim had several other blots on his record. Nothing here suggests that his visa was denied for a constitutionally troublesome reason such as religious discrimination, and so we have no need to consider how such a case should be approached. In addition, there is nothing in this record to suggest that the consular officers involved were proceeding in bad faith. At oral argument, Hazama's lawyer asserted that the U.S. consulate in Jerusalem regularly prolongs its consideration of visa applications and denies those coming from citizens of the Palestinian Authority, but we have not taken this allegation into account in resolving this appeal, because it was not presented to the district court and (probably for that reason) there is no support in this record for a finding of the alleged systematic bias.

Finally, even if we were to find that Hazama was entitled
to a reasoned explanation of the denial, she would still be out
of luck. Ghneim, and so we assume Hazama, received a full
explanation in a signed letter of a page and a half. The letter
laid out all the grounds for refusal, explained why they ap-
plied, cited relevant precedent, and explained the agency re-
view process. That was more than enough.

Hazama has raised several other points, but they all rep-
resent an effort to dilute or eliminate the consular nonreview-
ability doctrine, or they are procedural points that lay within
the district court's discretion. The fact that she cannot succeed
under ordinary standards of appellate review demonstrates
that her petition for mandamus must also fail. We therefore
AFFIRM the judgment of the district court, with instructions
that the judgment be modified to reflect that it rejects an ad-
judication on the merits, not for lack of subject-matter juris-
diction.