In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 15-3633

ESMERALDA Y. MORFIN and ADRIAN ULLOA,

*Plaintiffs-Appellants*,

*v.*

REX W. TILLERSON, Secretary of State, and JOHN F. KELLY, Secretary of Homeland Security,

*Defendants-Appellees*.

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 10198 — **John Z. Lee**, *Judge*.

———————

ARGUED DECEMBER 2, 2016 — DECIDED MARCH 20, 2017

———————

Before WOOD, *Chief Judge*, and EASTERBROOK and WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. In 2009 Adrian Ulloa, a citizen of Mexico, married Esmeralda Morfin, a citizen of the United States. She began the process of getting approval for his permanent residence (and ultimately citizenship). But because Ulloa was present in the United States without authority, this process required him to return to Mexico and

obtain a visa for a lawful entry. In 2014 he applied at the consulate in Ciudad Juarez. After twice interviewing Ulloa, the State Department denied his request for a visa, stating that it had reason to believe that he is (or was) involved in drug trafficking. In 2001 Ulloa had been indicted for possessing more than 500 grams of cocaine, with intent to distribute. See 21 U.S.C. §841(a)(1). The U.S. Attorney dismissed the indictment a few months later (the record does not show why), and Ulloa denies the charge, but the absence of a trial means that he lacks a favorable adjudication.

In this suit under the Administrative Procedure Act, 5 U.S.C. §702, Morfin and Ulloa asked the district court to find that the decision not to give Ulloa a visa is arbitrary and not supported by substantial evidence. Defendants (the Secretaries of State and Homeland Security) replied that decisions to grant or deny visa applications are committed to agency discretion and so are outside the scope of judicial review under the APA. See 5 U.S.C. §701(a)(2). The district court agreed and dismissed the suit for lack of subject-matter jurisdiction. That was a misstep. As we explain in *Builders Bank v. FDIC*, 846 F.3d 272 (7th Cir. 2017), §701(a)(2) does not curtail jurisdiction granted by other laws. Commitment of a topic to agency discretion is a reason to decide in the agency's favor but does not imply that a court lacks adjudicatory competence. We concluded in *Builders Bank* that §701(a)(2) "is no more a limit on subject-matter jurisdiction than are doctrines of absolute and qualified immunity, statutes of limitations, and many other rules that prevent courts from deciding whether the defendant acted properly." 846 F.3d at 275.

But the fact remains that for more than a hundred years courts have treated visa decisions as discretionary and not

subject to judicial review for substantial evidence and related doctrines of administrative law. See *Kleindienst v. Mandel*, 408 U.S. 753, 765–70 (1972) (collecting cases). *Mandel* recognized a potential exception for situations in which denial of a visa violates the constitutional rights of a U.S. citizen (in *Mandel* the right was the First Amendment), and Morfin tries to take advantage by contending that the rejection of Ulloa's application violated her right to due process of law under the Fifth Amendment. A similar line of argument was advanced in *Kerry v. Din*, 135 S. Ct. 2128 (2015), and did not prevail. The district judge concluded that *Din* forecloses Morfin's contention.

Before considering *Din* we must say a few words about *Mandel*. The Court concluded that the First Amendment creates at least a conditional right of U.S. citizens to receive information, in this country, from foreign nationals. But the Justices did not find this a sufficient reason for the judiciary to make an independent decision about when a foreign national is entitled to a visa. Instead the Court reaffirmed earlier opinions saying that Congress has plenary authority to exclude particular categories of aliens. The possibility of an exception for speech arose only because Congress had authorized the Attorney General to waive some speech-related conditions of excludability. The Justices did not decide whether review of a decision not to waive a condition of inadmissibility ever would be proper. They thought the final decision on that subject unnecessary because the Attorney General had informed "Mandel's counsel of the reason for refusing him a waiver. And that reason was facially legitimate and bona fide." 408 U.S. at 769. The Court wrapped up:

> We hold that when the Executive exercises this [waiver] power
> negatively on the basis of a facially legitimate and bona fide rea-

son, the courts will neither look behind the exercise of that dis-
cretion, nor test it by balancing its justification against the First
Amendment interests of those who seek personal communica-
tion with the applicant.

*Id*. at 770. That holding set the stage for *Din*, in which the plaintiffs tried to find a constitutional theory that would not require the judiciary to look behind the Executive Branch's reasons for denying a visa.

Fauzia Din, a citizen of the United States, married Kanishka Berashk, a citizen of Afghanistan. After the State Department denied Berashk's application for a visa to enter this nation, Din filed suit. She contended that the Department had violated her right under the Due Process Clause of the Fifth Amendment to live with her husband, at least without a formal hearing to determine whether Berashk was excludable. Recognition of such a right would have avoided any need for the judiciary to review the substance of the State Department's decision. But a majority of the Court ruled against Din. Three members (the Chief Justice plus Justices Scalia and Thomas) concluded that the Fifth Amendment does not apply, because a citizen has neither a liberty nor a property interest in an alien's presence in the United States. 135 S. Ct. at 2131–38. Four members (Justices Ginsburg, Breyer, Sotomayor, and Kagan) disagreed with that reading of the Fifth Amendment and concluded that a U.S. citizen is entitled to an administrative procedure at which she can test the accuracy of allegations or beliefs that lead the State Department to deny her spouse a visa. 135 S. Ct. at 2141–47.

The Court's other two members (Justices Kennedy and Alito) thought that they did not have to decide whether the U.S. spouse has a liberty or property interest, because the case could be resolved in the same way as *Mandel*: with a

conclusion that judges will not go behind apparently legitimate explanations. 135 S. Ct. at 2139–41. The State Department had revealed the basis of its decision—that Berashk was a terrorist excluded by 8 U.S.C. §1182(a)(3)(B). The Department had not set out facts supporting this view, but Justices Kennedy and Alito thought that unnecessary (135 S. Ct. at 2140):

> The provisions of §1182(a)(3)(B) establish specific criteria for determining terrorism-related inadmissibility. The consular officer's citation of that provision suffices to show that the denial rested on a determination that Din's husband did not satisfy the statute's requirements. Given Congress' plenary power to "suppl[y] the conditions of the privilege of entry into the United States," *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950), it follows that the Government's decision to exclude an alien it determines does not satisfy one or more of those conditions is facially legitimate under *Mandel*.

Justices Kennedy and Alito considered the possibility that a groundless decision might fall outside the set of "facially legitimate and bona fide" reasons but wrote that the exclusion of Berashk could not be so classified, for he conceded working as an officer of the Taliban government when that group ruled Afghanistan.

> [This] provides at least a facial connection to terrorist activity. Absent an affirmative showing of bad faith on the part of the consular officer who denied Berashk a visa—which Din has not plausibly alleged with sufficient particularity—*Mandel* instructs us not to "look behind" the Government's exclusion of Berashk for additional factual details beyond what its express reliance on §1182(a)(3)(B) encompassed.

135 S. Ct. at 2141.

The district court found that *Din* forecloses Morfin's claim, and we agree with that conclusion. Morfin advances

the same due process argument as Din. Whether the denial of Ulloa's visa application affected any of Morfin's liberty or property interests is unresolved after *Din*, because Justices Kennedy and Alito did not address that subject. Instead they left things as *Mandel* had left them—and the opinion in *Mandel* spoke for a majority of the Court, sparing us the need to determine how to identify the controlling view in *Din* given that the concurring opinion is not a logical subset of the lead opinion (or the reverse). See *Marks v. United States*, 430 U.S. 188 (1977). *Mandel* tells us not to go behind a facially legitimate and bona fide explanation.

The consular officer in Ciudad Juarez gave Ulloa a facially legitimate and bona fide explanation. The officer relied on 8 U.S.C. §1182(a)(2)(C), which disqualifies "[a]ny alien who the consular officer or the Attorney General knows or has reason to believe—(i) is or has been an illicit trafficker in any controlled substance". The State Department cited this provision when denying Ulloa's application, just as it had cited §1182(a)(3)(B) when denying Berashk's. And just as in *Din*, the record forecloses any contention that the State Department was imagining things. Ulloa had been indicted for possessing a substantial quantity of cocaine with intent to distribute.

All §1182(a)(2)(C) requires is "reason to believe" that the applicant is or was a drug dealer. An indictment provides a "reason to believe" that its accusation is true; indeed, it conclusively establishes probable cause to believe that the accusation is true. That's why *Kaley v. United States*, 134 S. Ct. 1090 (2014), holds that a federal court cannot go behind the face of the indictment to explore a defendant's contention that the charge is not based on probable cause. The question

in *Kaley* was whether the defendant could deny the charge of the indictment and so free up resources for paying counsel, resources that otherwise would be sequestered as the proceeds of crime. The Court said no; the indictment is conclusive on the question whether there is probable cause to believe that the accused committed the charged acts. Likewise a federal court will not go behind the face of an indictment when an alien seeks to undermine the State Department's reasons for denying a visa.

Perhaps the refusal to issue Ulloa a visa could be said to lack a "facially legitimate and bona fide reason" (in *Mandel*'s words) if the consular official had concluded that the indictment's charges were false, or if Ulloa had presented strong evidence of innocence that the consular officer refused to consider. But neither his complaint nor his appellate brief makes such an argument.

Because the consular officer gave a legitimate reason for denying Ulloa's application, and the indictment supplies "reason to believe" that he trafficked in cocaine, *Mandel* prevents the judiciary from reweighing the facts and equities. Whether Congress acted wisely in making "reason to believe" some fact sufficient to support (indeed, compel) the denial of a visa application is not a question open to review by the judiciary. The district court's judgment is modified to reject plaintiffs' claim on the merits rather than for lack of jurisdiction and as so modified is

AFFIRMED.