Elena MATUSHKINA and Svetlana
Son, Plaintiffs-Appellants,

v.

Kirstjen M. NIELSEN, Secretary of
Homeland Security, and Matthew Da-
vies, Chicago Area Port Director, U.S.
Customs & Border Protection, Defen-
dants-Appellees.

No. 17-1336

United States Court of Appeals,
Seventh Circuit.

Argued September 8, 2017

Decided December 7, 2017

Rehearing Denied January 26, 2018

Justin R. Burton, Attorney, Kriezelman Burton & Associates, Kevin Andrew Raica, Attorney, Maria Baldini-Potermin & Associates, Chicago, IL, for Plaintiffs–Appellants.

Craig A. Oswald, Attorney, Office of the United States Attorney, Chicago, IL, Adrienne Zack, Attorney, Department of Justice, Civil Division, Washington, DC, for Defendants–Appellees.

Before MANION, KANNE, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

Plaintiffs Elena Matushkina and her daughter Svetlana Son filed this suit against federal officials after a U.S. Consulate denied Matushkina's immigrant visa application in 2015. The well-established doctrine of consular nonreviewability makes it impossible, or nearly so, for plaintiffs to challenge the visa denial. Plaintiffs insist that their suit does not challenge the visa denial. Instead, they seek relief under the Administrative Procedure Act ("APA") from the government's determination that Matushkina was inadmissible when she tried to enter the country back in 2009. The district court dismissed for lack of standing.

This is one of those cases where the line between standing and the merits is rather fine but makes little practical difference. We affirm the dismissal but we do so on the merits rather than for lack of standing. The case is in essence a challenge to the visa denial, and that decision is not subject to judicial review.

I. *Factual and Procedural Background*

A. *The 2015 Visa Denial*

Elena Matushkina is a Russian citizen who applied for an immigrant visa to the United States. Svetlana Son is Matushkina's daughter and is a U.S. citizen. Sometime after Son became a citizen in 2013, she filed an I-130 visa petition on Matushkina's behalf. The government approved that petition, which allowed Matushkina to apply for the immigrant visa. When Matushkina applied, however, a U.S. Consulate denied her application in 2015 because U.S. Customs and Border Protection ("CBP") had determined at the border back in 2009 that she is inadmissible.

B. *The 2009 Inadmissibility Determination*

Matushkina and Son insist that their suit does not challenge the 2015 visa denial but instead challenges the earlier 2009 determination by CBP. In 2009, Matushkina tried to visit the United States on a visitor's (nonimmigrant) visa. When she arrived at O'Hare International Airport in Chicago, though, a CBP officer interviewed her and learned that Matushkina had not disclosed to the U.S. Embassy that her daughter was working in the United States in violation of her student visa. Matushkina had been afraid to disclose that fact because she feared she would not receive a visa. The officer determined that Matushkina's failure to disclose her daughter's violation of her student visa status was a willful misrepresentation of a material fact, and that made Matushkina herself inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i).

Aliens who are deemed inadmissible under section 1182(a)(6)(C)(i) are subject to expedited removal under 8 U.S.C. § 1225(b)(1)(A)(i). However, CBP officers have the option of allowing an inadmissible alien to withdraw her application for admission, leave the country, and avoid removal proceedings. See U.S. Dep't of Justice, CBP Inspector's Field Manual 17.2(a) (2006). On the spot, Matushkina withdrew her application for admission and acknowledged that her nonimmigrant visa would be cancelled. The CBP officer entered the inadmissibility finding in the State Department's electronic lookout system. Matushkina's nonimmigrant visa was can-

celled, and she promptly left the United States.

### C. *This Lawsuit*

Almost seven years after CBP's 2009 determination at O'Hare Airport, Matushkina and Son filed this suit against the Secretary of Homeland Security and the Chicago Area Port Director of the CBP under the APA. Their complaint alleged that the 2009 inadmissibility determination violated the APA and that the CBP officer violated provisions of the CBP Inspector's Field Manual and "due process and notions of fundamental fairness." They asked the district court to set aside the inadmissibility determination and to declare that Matushkina did not make a material misrepresentation.

The district court dismissed the case for lack of standing. *Matushkina v. Davies*, No. 16 CV 7360, 2017 WL 5894994 (N.D. Ill. Feb. 2, 2017). The court reasoned that as an unadmitted alien, Matushkina had no legally protected right to enter the United States. The court also found that Son had no standing because she was not yet a citizen at the time of the challenged inadmissibility determination. Matushkina and Son both appeal.

### II. *Analysis*

■ The district court found a lack of standing on the pleadings. It did not make any factual findings or rely on any of the documents the government attached to its combined motion to dismiss for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Our review is therefore *de novo*.[1]

### A. *Standing*

The line between a lack of standing and a failure to state a claim for relief on the merits can be a fine one, as this case shows. The basic problem is that the lead plaintiff does not have a legal right enforceable in a federal court, but it is not always obvious in such cases whether the problem is a lack of standing or lack of a viable claim on the merits. We explain first why Matushkina meets the requirements for standing before explaining why she lacks a legally enforceable right. Because Matushkina has standing, we need not address whether her daughter does. E.g., *Ezell v. City of Chicago*, 651 F.3d 684, 696 n.7 (7th Cir. 2011) ("Where at least one plaintiff has standing, jurisdiction is secure and the court will adjudicate the case whether the additional plaintiffs have standing or not.").

■ Standing has three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. ——, ——, 136 S.Ct.

---

1. The district court did not reach the government's arguments that the suit should fail under the APA for lack of final agency action, see 5 U.S.C. § 704, and as barred by the statute of limitations in 28 U.S.C. § 2401(a). We do not think either argument affects subject matter jurisdiction. The Supreme Court recently held that the other subsection of section 2401 is *not* jurisdictional. *United States v. Kwai Fun Wong*, 575 U.S. ——, ——, 135 S.Ct. 1625, 1638, 191 L.Ed.2d 533 (2015) (time limits in 28 U.S.C. § 2401(b) are not jurisdictional). And we recently indicated that section 704 is not jurisdictional either. See *Builders Bank v. FDIC*, 846 F.3d 272, 274, 275 (7th Cir. 2017) (collecting cases distinguishing between "truly jurisdictional rules" and "case-processing doctrines," and noting that "possibility of pre-enforcement review ... shows that a litigant-specific final decision is not a jurisdictional requirement" where agency "has acquiesced in immediate review"); see also Sundeep Iyer, Comment, *Jurisdictional Rules and Final Agency Action*, 125 Yale L.J. 785 (2016) (discussing "erroneous jurisdictional treatment").

1540, 1547, 194 L.Ed.2d 635 (2016), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). We address these elements in turn.

### 1. *Injury in Fact*

An injury in fact requires " 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Spokeo*, 578 U.S. at ——, 136 S.Ct. at 1548, quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. The interest at issue need not rise to the level of a right, let alone a constitutional right. See *Lujan*, 504 U.S. at 562–63, 112 S.Ct. 2130 ("Of course, the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing.").

Matushkina had an interest in her admissibility to the United States, and the injury to that interest is apparent on the face of the complaint. The CBP officer entered the inadmissibility finding in the lookout system, Matushkina's nonimmigrant visa was cancelled, and a U.S. Consulate later denied Matushkina's request for an immigrant visa because of the earlier inadmissibility determination. Matushkina also satisfies the other components of an injury in fact. Her injury is concrete because it "actually exist[s]," *Spokeo*, 578 U.S. at ——, 136 S.Ct. at 1548, and it is particularized because it "affect[s her] in a personal and individual way," *id.*, quoting *Lujan*, 504 U.S. at 560 n.1, 112 S.Ct. 2130. Her injury is not hypothetical or conjectural.

The district court reasoned that Matushkina lacked standing because she is an alien who "has no right of entry into the United States, and no cause of action to press in furtherance of [her] claim for admission." A right of entry, however, is not a prerequisite to standing in the case of someone seeking entry to the United States. See *Stenographic Machs., Inc. v. Reg'l Adm'r for Emp't & Training*, 577 F.2d 521, 528 (7th Cir. 1978) (alien employee who, presumably, was already present in country had constitutional standing because denial of employment certificate caused economic injury); see also *American Immigration Lawyers Ass'n v. Reno*, 18 F.Supp.2d 38, 47, 60 (D.D.C. 1998) (individual visa holders had standing despite having no constitutional right to admission), *aff'd as modified*, 199 F.3d 1352 (D.C. Cir. 2000). We recently found in *Musunuru v. Lynch*, 831 F.3d 880 (7th Cir. 2016), that an employee beneficiary of an employer's I-140 petition had constitutional standing to challenge the revocation of a previously approved petition. *Id.* at 882 n.1, citing *Kurapati v. U.S. Bureau of Citizenship & Immigration Servs.*, 775 F.3d 1255, 1259–61 (11th Cir. 2014) (viewing "deprivation of an opportunity to apply for adjustment of status" as injury), and *Patel v. U.S. Citizenship & Immigration Servs.*, 732 F.3d 633, 637–38 (6th Cir. 2013) (viewing "the loss of an opportunity to become a permanent resident" as injury). We reached this conclusion in *Musunuru* even though the employee had no protected liberty or property interest in the petition's validity for a Fifth Amendment claim. 831 F.3d at 891. We recently reached a similar result in an asylum case. See *Garcia v. Sessions*, 873 F.3d 553, 556 (7th Cir. 2017) (viewing "denial of a statutory right to apply for asylum" as injury "even though there is no due process right to asylum").

### 2. *Causation*

Causation is straightforward here. The plaintiff's alleged injury must be causally connected to a defendant's conduct rather than to a third party's conduct. *Lujan*, 504

U.S. at 560, 112 S.Ct. 2130. Defendants Nielsen and Davies oversee the department and the port, respectively, in which the CBP officer concluded that Matushkina made a fraudulent misrepresentation. The CBP officer's conclusion triggered the inadmissibility determination, which resulted in the loss of Matushkina's visa in 2009 and the denial of a new one in 2015.

### 3. Redressability.

The alleged injury could be redressed by a court if Matushkina could prevail on the merits. See *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130. At least in theory, a court order setting aside the determination that she made a misrepresentation could remove the obstacle to her visa application. The fact that the Consulate could still deny Matushkina's visa application on some other ground does not defeat standing. See *Kurapati*, 775 F.3d at 1259–60 (favorable decision would redress injury "even though USCIS might not ultimately approve the immigrant's adjustment of status application"). Matushkina thus has standing, so we move on to the merits.

### B. *Consular Nonreviewability*

■ By seeking to set aside the inadmissibility determination, Matushkina attacks the basis for the denial of her visa application. "Consular nonreviewability" is the general rule that decisions "to issue or withhold a visa" are not reviewable in court "unless Congress says otherwise." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999). In its purest form, consular nonreviewability creates a

"general norm of nonreviewability." *Hazama v. Tillerson*, 851 F.3d 706, 708 (7th Cir. 2017). The doctrine bars judicial review of visa decisions made by consular officials abroad. See *Saavedra Bruno*, 197 F.3d at 1159. The bar is not absolute, though. We have recognized that language in *Kleindienst v. Mandel*, 408 U.S. 753, 770, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972), "suggests at least two possible exceptions to the general norm of nonreviewability." *Hazama*, 851 F.3d at 708.

■ First, we may conduct a limited review to determine whether a visa was denied for a bona fide and facially legitimate reason. *Id.*, again citing *Mandel*, 408 U.S. at 770, 92 S.Ct. 2576; accord, *Morfin v. Tillerson*, 851 F.3d 710, 713–14 (7th Cir. 2017). Under this analysis, we do not look to see whether a consular official properly construed and applied relevant provisions of law. *Hazama*, 851 F.3d at 709 (rejecting suggestion of *amicus curiae* to "adopt a rule under which we would examine whether the officer 'properly construed and applied' the relevant provisions of law"). Instead, we "look at the face of the decision, see if the officer cited a proper ground under the statute, and ensure that no other applicable constitutional limitations are violated. Once that is done, if the undisputed record includes facts that would support that ground, our task is over." *Id.* Second, review may also be permitted where a denial of an alien's application affects a U.S. citizen's constitutional rights. *Id.*, citing *Cardenas v. United States*, 826 F.3d 1164, 1169 (9th Cir. 2016); see *Morfin*, 851 F.3d at 711–13.[2]

---

**2.** We treat the doctrine of consular nonreviewability as a matter of a case's merits rather than the federal courts' subject matter jurisdiction. See *Morfin*, 851 F.3d at 711, 714; *Hazama*, 851 F.3d at 707, 710. To the extent that *Saavedra Bruno* has been read to apply the doctrine using the language of subject matter jurisdiction, we note that the opinion

was written in 1999, before the Supreme Court's series of more recent decisions clarifying and narrowing the scope of subject matter jurisdictional doctrines, as distinct from a host of other case-processing rules. See, e.g., *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010).

In an effort to avoid the doctrine of consular nonreviewability, Matushkina has not sued the State Department or U.S. consular officials in Russia. Instead she has sued CBP, which made the 2009 determination that became the basis for the 2015 visa denial. She challenges the inadmissibility determination that is the basis for the unfavorable visa decision (which in turn provides standing). We conclude that this indirect attack on the visa denial cannot succeed. Courts have applied the doctrine of consular nonreviewability even to suits where a plaintiff seeks to challenge a visa decision indirectly. See, e.g., *Malyutin v. Rice*, 677 F.Supp.2d 43, 46 (D.D.C. 2009) (applying doctrine to theory that visa denial obstructed plaintiff's access to state court because "the doctrine also applies where a plaintiff attempts to circumvent the doctrine by claiming [that] he is not seeking a review of the consular officer's decision, but is challenging some other, related aspect of the decision"), *aff'd*, No. 10-5015, 2010 WL 2710451 (D.C. Cir. July 6, 2010); *Al Makaaseb Gen. Trading Co. v. Christopher*, No. 94 CIV. 1179 (CSH), 1995 WL 110117, at *3 (S.D.N.Y. Mar. 13, 1995) (rejecting challenge to inclusion of visa applicant on lookout list because "such a challenge cannot be divorced from an attack of the decision itself"); *Garcia v. Baker*, 765 F.Supp. 426, 428 (N.D. Ill. 1990) (collecting cases and rejecting challenge of visa denial characterized as challenge to State Department's legal opinion allegedly rendered contrary to law because courts "cannot review a consular officer's decision even upon allegations that the consular officer acted on erroneous information, that the INA did not authorize the officer's decisions, that the officer erroneously interpreted and applied the INA, or that the State Department failed to follow its own regulations" (citations omitted)). Courts are not required to take a plaintiff's word that she is not challenging the visa denial.

E.g., *Luo v. Coultice*, 178 F.Supp.2d 1135, 1139 (C.D. Cal. 2001) ("Although Plaintiffs have brought suit against the INS, through the Director of a local service center, their real quarrel is with the consular officials in China who denied their applications.").

The timing of Matushkina's suit is telling. Instead of filing suit after her nonimmigrant visa was cancelled and CBP entered the inadmissibility determination in the lookout system in 2009, she filed suit in 2016 after the Consulate denied her immigrant visa application. And the relief Matushkina seeks is equally telling. She wanted the district court to declare invalid CBP's determination that she misrepresented something on her earlier visa application and to declare that she did not make a material misrepresentation. The end result of either relief explains why consular nonreviewability bars Matushkina's claim: each would remove an obstacle for her visa application, which is why she has standing to assert her claim.

Turning back to doctrinal substance, neither of the doctrine's suggested exceptions can save Matushkina's claims. We have not applied these exceptions to antecedent determinations underlying a visa denial. Even if the exceptions applied, Matushkina's claims would still fail. The record makes clear that the CBP officer's determination of fraud was facially legitimate and bona fide. The issue is not whether the officer properly construed and applied 8 U.S.C. § 1182(a)(6)(C)(i). Examining whether an official properly construed and applied the law would expand the facial-legitimacy and bona-fide-reason inquiry into full-blown merits review. See *Hazama v. Tillerson*, 851 F.3d 706, 709 (7th Cir. 2017).

In addition, the stated basis for the finding (as well as the visa denial) was bona fide and facially legitimate. The officer cit-

ed the fraud and misrepresentation statute as the basis for inadmissibility, and the transcript supports that citation. Matushkina acknowledged in the interview that she omitted information about her daughter's employment. Her recent efforts to recant that acknowledgment do not undermine the original decision. The affidavit in which she disputes the accuracy of the transcript and the copy of her nonimmigrant visa application (which the complaint alleges does not require disclosure of her daughter's employment) were not before the district court. We cannot consider those documents on appeal because they were put before us—improperly—for the first time as an appendix to Matushkina's reply brief. Consideration of them would take us far beyond facial legitimacy and into consideration of the merits.

Even if the exception for an effect on a citizen's constitutional rights could apply, Son was not a citizen when Matushkina was deemed inadmissible. That makes her unlike the citizen-plaintiffs in *Morfin*, *Hazama*, and *Din*. Moreover, Son—like the sponsor-plaintiffs in *Saavedra Bruno*—does not assert any freestanding constitutional claim of her own. See *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1163 (D.C. Cir. 1999).

In an attempt to avoid the consular non-reviewability doctrine, Matushkina cites three cases, but they do not persuade us to allow her suit to proceed. The first is *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 45 F.3d 469 (D.C. Cir. 1995), where plaintiffs alleged that the State Department violated the Administrative Procedure Act, the Immigration and Nationality Act, and the Constitution by discriminatorily halting visa processing based on national origin. Matushkina's citation omits critical subsequent history. The Supreme Court vacated the judgment and remanded the case to the D.C. Circuit

after Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *U.S. Dep't of State v. Legal Assistance for Vietnamese Asylum Seekers, Inc.*, 519 U.S. 1, 117 S.Ct. 378, 136 L.Ed.2d 1 (1996) (per curiam). On remand, the D.C. Circuit held that the Immigration and Nationality Act and APA claims were unreviewable and that the equal protection claim failed on the merits. *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 104 F.3d 1349, 1352–54 (D.C. Cir. 1997).

Second, Matushkina cites *Patel v. Reno*, 134 F.3d 929 (9th Cir. 1997), where the Ninth Circuit issued a writ of mandamus ordering the consulate to act, one way or another, on a visa application that had been pending for eight years. Whether that decision was correct or not, the court did not suggest that it would review the merits of any eventual denial in any depth beyond the facial legitimacy review discussed in *Mandel*.

Third, Matushkina tries to counter the force of *Saavedra Bruno* by citing *Maramjaya v. U.S. Citizenship & Immigration Servs.*, No. 06-2158 (RCL), 2008 WL 9398947 (D.D.C. Mar. 26, 2008), which held that the plaintiff had standing because he did not challenge the visa decision of a consular official but instead contended that U.S. Citizenship and Immigration Services violated the Act by denying his employer's I-140 petition filed on his behalf. We have already held that Matushkina has standing. Moreover, *Maramjaya* simply did not involve a visa denial. There was not even the possibility of using the procedural attack on the denial of the I-140 as a back door to challenge a visa denial.

Finally, we explain briefly why we have jurisdiction on appeal, in the absence of a cross-appeal, to convert the dismissal for lack of standing to a dismissal on the merits. As a general rule, where a defen-

dant has won dismissal for lack of standing or some other jurisdictional ground, modifying the judgment to dismissal on the merits would expand the defendant's rights or limit the plaintiff's rights under the judgment (by foreclosing another lawsuit). This ordinarily requires a cross-appeal. See, e.g., *Remijas v. Neiman Marcus Grp., LLC,* 794 F.3d 688, 697 (7th Cir. 2015), citing *Jennings v. Stephens,* 574 U.S. ——, ——, 135 S.Ct. 793, 798, 190 L.Ed.2d 662 (2015) (without cross-appeal, appellee may not urge theory that would enlarge its rights or lessen appellant's rights).

The general rule does not apply, however, where a jurisdictional dismissal effectively bars relief on the merits in any judicial forum. In such cases, modifying the dismissal from jurisdiction to merits makes no practical difference. It does not expand the defendant's rights and does not require a cross-appeal. We took that approach in *Hazama v. Tillerson,* 851 F.3d 706, 710 (7th Cir. 2017) (modifying judgment and dismissing petition for mandamus and claims under the APA on merits), and in *Morfin v. Tillerson,* 851 F.3d 710, 714 (7th Cir. 2017) (modifying judgment and dismissing claims under the APA on merits). Modifying the judgment in this case is consistent with our approach in *Hazama* and *Morfin* and with the practical effects of *Jennings* and *United States v. American Ry. Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 68 L.Ed. 1087 (1924), which prohibited attempts to "supplement the decree with respect to a matter not dealt with" but allowed raising "any matter appearing in the record, although [the] argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it."

The case should not have been dismissed for lack of standing but it must be dis-

missed on the merits. We modify the judgment to a dismissal on the merits for failure to state a claim upon which relief can be granted, and as modified, the judgment is

AFFIRMED.