Barrett, Circuit Judge.
A consular officer twice denied the visa application of Zahoor Ahmed, a citizen of Yemen, on the ground that she had sought to smuggle two children into the United States. Ahmed and her husband Mohsin Yafai-a United States citizen-filed suit challenging the officer's decision. But the decision is facially legitimate and bona fide, so the district court correctly dismissed the plaintiffs' challenge to it under the doctrine of consular nonreviewability.
I.
Mohsin Yafai and Zahoor Ahmed were born, raised, and married in Yemen. Yafai became a naturalized United States citizen in 2001. After receiving his citizenship, Yafai filed I-130 petitions with the U.S. Citizenship and Immigration Service of the Department of Homeland Security on behalf of his wife and several of their children. The I-130 petitions-which, if granted, would permit them to apply for immigrant visas-were approved. Ahmed and her children subsequently applied for visas.
But the consular officer denied Ahmed's visa application.[1] The officer based the denial on attempted smuggling under 8 U.S.C. § 1182(a)(6)(E), which provides that "[a]ny alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is inadmissible." The denial stated: "You attempted to smuggle two children into the United States using the identities Yaqub Mohsin Yafai and Khaled Mohsin Yafai."
Yafai and Ahmed told the embassy that Yaqub and Khaled were their children, *1020 both of whom had tragically drowned. Although it is not entirely clear from either the record or the plaintiffs' brief, their position seems to have been that Ahmed could not be guilty of smuggling, because the children whom she had allegedly smuggled were deceased. In response, the consular officer requested additional documents about the children so that the officer could reconsider Ahmed's application. The officer requested (and Ahmed provided) seven types of documents: (1) vaccination records; (2) Khaled's school records; (3) hospital bills; (4) hospital birth records; (5) the police report from the drowning accident; (6) Khaled's passport; and (7) family photos.
After providing the documents, the plaintiffs' attorney contacted the consular office to request an update on the matter. An embassy fraud prevention manager working on Ahmed's case responded by email. The email stated:
We acknowledge that there has been some repetition in examining the circumstances of the purported deaths of two beneficiaries, but we note that your clients do not testify credibly, testify contradictorily, deny the existence of evidence, and otherwise cast doubt on the accuracy of their responses. Hence they were questioned by the interviewing officer who referred their cases to the Fraud Prevention Unit whereupon we explored the same issues in more detail with you[r] clients. Based on their testimony, we concluded the evidence which you attached did exist, hence we requested its production in an effort to corroborate the testimony of your clients, not impeach it. As of this writing, a fraud investigator is reviewing the evidence and we will finalize our fraud report for the adjudicating officer.
Several months after this email was sent, the consular officer reaffirmed the prior visa denial for attempted smuggling under § 1182(a)(6)(E).[2]
Yafai and Ahmed subsequently filed suit challenging the denial under the Declaratory Judgment Act and the Administrative Procedure Act. They argued that the consular officer acted in bad faith by ignoring evidence that Yaqub and Khaled were their children and that they were deceased. The district court dismissed the claims under the doctrine of consular nonreviewability.
II.
Congress has delegated the power to determine who may enter the country to the Executive Branch, and courts generally have no authority to second-guess the Executive's decisions. Kleindienst v. Mandel , 408 U.S. 753, 769-70, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972). To that end, the doctrine of consular nonreviewability "bars judicial review of visa decisions made by consular officials abroad."
*1021 Matushkina v. Nielsen , 877 F.3d 289, 294 (7th Cir. 2017). The Supreme Court has identified a limited exception to this doctrine, however, when the visa denial implicates a constitutional right of an American citizen. Mandel , 408 U.S. at 769-70, 92 S.Ct. 2576 ; see Morfin v. Tillerson , 851 F.3d 710, 711 (7th Cir. 2017). Yet even in that circumstance, a court may not disturb the consular officer's decision if the reason given is "facially legitimate and bona fide." Mandel , 408 U.S. at 769, 92 S.Ct. 2576.
The plaintiffs invoke this limited exception to the doctrine of consular nonreviewability on the ground that denying Ahmed a visa implicates one of Yafai's constitutional rights: his right to live in America with his spouse. The status of this right is uncertain. In Kerry v. Din , a plurality of the Supreme Court said that no such right exists, --- U.S. ----, 135 S.Ct. 2128, 2131, 192 L.Ed.2d 183 (2015) (plurality opinion), and if we were to adopt the plurality's reasoning, our analysis would end here. But we have avoided taking a position on this issue in the past, see, e.g. , Hazama v. Tillerson , 851 F.3d 706, 709 (7th Cir. 2017), and we need not do so now. Even if the denial of Ahmed's visa application implicated a constitutional right of Yafai's, his claim fails because the consular officer's decision was facially legitimate and bona fide.
For a consular officer's decision to be facially legitimate and bona fide, the consular officer must identify (1) a valid statute of inadmissibility and (2) the necessary "discrete factual predicates" under the statute. See Din , 135 S.Ct. at 2140-41 (Kennedy, J., concurring). When a statute "specifies discrete factual predicates that the consular officer must find to exist before denying a visa," the citation of the statutory predicates is itself sufficient. Id. at 2141. In other words, the consular officer need not disclose the underlying facts that led him to conclude that the statute was satisfied. Id. (" Mandel instructs us not to 'look behind' the Government's exclusion of [the alien spouse] for additional factual details beyond what its express reliance on [the relevant statutory provision] encompassed.") (citing Mandel , 408 U.S. at 770, 92 S.Ct. 2576 ) ); see also Morfin , 851 F.3d at 713-14 (explaining that citation to the statutory requirements supplies a legitimate reason for denying a visa application).
Here, the officer provided a facially legitimate and bona fide reason for denying Ahmed's application. He cited a valid statutory basis: 8 U.S.C. § 1182(a)(6)(E). And he provided the factual predicate for his decision: "You attempted to smuggle two children into the United States using the identities Yaqub Mohsin Yafai and Khaled Mohsin Yafai." No more was required, and under Mandel , we cannot "look behind the exercise of that discretion." 408 U.S. at 770, 92 S.Ct. 2576.[3]
*1022 III.
Yafai and Ahmed argue for an exception to Mandel's limited exception of consular nonreviewability. They contend that a court must engage in more searching review of a facially legitimate and bona fide decision if the plaintiffs make an affirmative showing that the decision was made in bad faith. And Yafai and Ahmed claim that they have made such a showing: they assert that the evidence they produced was strong, and the officer did not accept it. That, they say, demonstrates that the officer acted in bad faith.
It is unclear how much latitude-if any-courts have to look behind a decision that is facially legitimate and bona fide to determine whether it was actually made in bad faith. In Mandel , the Court refused to look behind a facially legitimate and bona fide decision over the dissent's vigorous objection that "[e]ven the briefest peek behind [it] ... would reveal that it is a sham." 408 U.S. at 778, 92 S.Ct. 2576 (Marshall, J., dissenting). Yet Justice Kennedy's concurrence in Din observes that an "affirmative showing of bad faith" that is "plausibly alleged with sufficient particularity" might justify more searching review, 135 S.Ct. at 2141, and we have, at least in dicta, allowed for the same possibility, see Morfin , 851 F.3d at 713-14 ("Perhaps the refusal to issue Ulloa a visa could be said to lack a 'facially legitimate and bona fide reason' ... if the consular official had concluded that the indictment's charges were false, or if Ulloa had presented strong evidence of innocence that the consular officer refused to consider."). Yafai and Ahmed might be right, therefore, that evidence of behind-the-scenes bad faith can overcome Mandel's rule that courts must stick to the face of the visa denial in evaluating it.
That exception would not benefit the plaintiffs here, however, because they have failed to make "an affirmative showing" that the officer denied Ahmed's visa in bad faith. Din , 135 S.Ct. at 2141 (Kennedy, J., concurring). The plaintiffs contend that the only conclusion that an honest officer could draw from reviewing their evidence is that Ahmed qualified for a visa. But the fact that the officer did not believe Ahmed and Yafai's evidence does not mean that the officer was dishonest or had an illicit motive. See Bad Faith , BLACK'S LAW DICTIONARY (10th ed. 2014) (defining bad faith as "[d]ishonesty of belief, purpose, or motive"). The officer could have honestly concluded that Ahmed and Yafai's testimony was not credible and that the documents they provided did not substantiate it. Cf. Bustamante v. Mukasey , 531 F.3d 1059, 1062-63 (9th Cir. 2008) (stating that to establish bad faith, a plaintiff must "allege that the consular official did not in good faith believe the information he had"). Making an "affirmative showing of bad faith" requires a plaintiff to point to something more than an unfavorable decision.
While it is not necessary for the Secretary of State to rebut Yafai and Ahmed's allegation of bad faith, we note that the evidence here reflects a good-faith evaluation of Ahmed's application. The officer asked Ahmed to submit additional documents so that the consulate could reconsider her visa application. A request for additional documents is inconsistent with the plaintiffs' allegation that the officer ignored evidence in bad faith; on the contrary, the officer's willingness to reconsider Ahmed's application in light of additional evidence suggests a desire to get it right. And the embassy officer's email to the plaintiffs' lawyer reveals good-faith reasons for rejecting the plaintiffs' response to the smuggling charge. It details concerns about the plaintiffs' credibility and contradictory testimony-concerns that cut directly against their argument that the officer acted insincerely in rejecting Ahmed's visa application.
*1023 * * *
The consular officer's decision to reject Ahmed's visa application was facially legitimate and bona fide, and the plaintiffs have made no affirmative showing that the officer acted in bad faith. Thus, the district court correctly dismissed the plaintiffs' claims, which were asserted under both the Administrative Procedure Act and the Declaratory Judgment Act. See Morfin , 851 F.3d at 714 (dismissing claim under the APA because doctrine of consular nonreviewability applies); Matushkina , 877 F.3d at 295 (stating that "[c]ourts have applied the doctrine of consular nonreviewability even to suits where a plaintiff seeks to challenge a visa decision indirectly"). The judgment of the district court is AFFIRMED.

The record does not reveal the name of the consular officer (or officers) who worked on Ahmed's case, so we refer to this person (or persons) throughout as "the consular officer" or "the officer."

The record before us does not include additional detail on the rationale behind the consular officer's decision. It does not show, for example, whether the officer concluded that Ahmed and Yafai did not have children named Yaqub and Khaled; whether the officer thought that Ahmed had tried to smuggle children into the United States using the names of children who were hers but who were now deceased; or whether the officer believed that Ahmed had children named Yaqub and Khaled whom she had tried to smuggle into the United States while they were still alive. If Ahmed tried to smuggle her own children into the United States, she could seek a waiver of the statutory bar. See 8 U.S.C. § 1182(d)(11) (giving the Attorney General the discretion to waive the bar if "the alien seeking admission ... encouraged, induced, assisted, abetted, or aided only an individual who at the time of such action was the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of law"). She has apparently not done so.

The dissent acknowledges that precedent requires nothing more than the consular officer's assertion of a facially legitimate and bona fide reason. See Dissenting Op. at 1023. Yet the dissent would add another hurdle: proof that the officer adequately considered the evidence in the visa application. According to the dissent, "we [ ] have the obligation to require, at the very least, that the Government assure us, by affidavit or similar evidence, that it actually took into consideration the evidence presented by the applicant and point to some factual support for the consular officer's decision to discount that evidence." Id. at 1030. That proposition contradicts the Supreme Court's holding in Mandel . See 408 U.S. at 770, 92 S.Ct. 2576. As we discuss in the next Part, a court might be able to look behind an apparently legitimate and bona fide decision when the plaintiff advances affirmative evidence of bad faith. But that would be a narrow exception-precedent clearly forecloses the dissent's position that we are authorized to demand more from the government as a matter of course.